218 N.J. Super. 427 (1986)
527 A.2d 963
STATE OF NEW JERSEY, PLAINTIFF,
v.
NANCY SANTIAGO, DEFENDANT.
Superior Court of New Jersey, Law Division (Criminal), Salem County.
Decided October 20, 1986.
*428 Noranne Stradley, Asst. Pros., for State (Frank J. Hoerst, III, Pros.)
Eugene J. McCaffrey, Jr. for defendant (Albertson, Ward & McCaffrey, attorneys).
TELSEY, P.J.Cr.
The unique issue presented here is whether inspectors employed by the Department of Environmental Protection (D.E.P.) are authorized to enter and conduct warrantless searches of commercial buildings and the personal property contained therein used by pesticide applicators licensed by the D.E.P. Defendant, an agent for the D.E.P., appeals her conviction for Criminal Trespass, in violation of N.J.S.A. 2C:18-3(a). She contends that, pursuant to N.J.S.A. 13:1F-9(c), D.E.P. field inspectors are privileged to enter and inspect the business premises and records of its licensees; therefore, the law provides a valid defense to a charge of Criminal Trespass when entering for that purpose.
In the proceedings below, the parties stipulated to the following facts: (1) that defendant Nancy Santiago is an inspector for the D.E.P. and (2) that she entered complainant Joseph Layton's business premises when Layton was not present. Mr. Layton is in the business of aerial application of pesticides, which is licensed by the D.E.P. Following a citizen complaint regarding a pesticide spray drift, which allegedly occurred during a spraying by Layton at Tucalou Orchards on September 1, 1985, the D.E.P. sent a letter to him dated November 1, 1985 requesting information regarding the spraying at Tucalou Orchards *429 on August 31, 1985. The complainant replied that there was no spraying on that date. Although Layton admitted that his records indicated that he performed an aerial application at Tucalou Orchards on September 1, he could not recall whether he sprayed there on August 31, nor did he disclose that fact to the D.E.P.'s inquiry.
A second letter was sent on November 18, 1985 correcting the date of the application to September 1, 1985. Layton responded by letter dated November 27, 1985 providing the information requested. During the intervening time between the two letters, the facts giving rise to this offense occurred.
On November 13, 1985, at approximately 3:00 p.m., Layton returned to his storage building when he observed Nancy Santiago, the defendant, and another person exiting the building. Layton testified that the door to the building was shut, but kept unlocked to invite customers.
When Layton entered his business premises, he discovered that the records required to be maintained by the D.E.P. were out of chronological order; particularly, those records relating to the spraying at Tucalou Orchards. They were on top of a pile in a closed desk drawer, instead of four or five places down in the pile.
Robert Kosinski, defendant's supervisor, testified that, in his opinion, the inspector had authority to enter the premises. He stated that field inspectors often investigate during working hours but, if entry is refused, the D.E.P. often seeks a warrant. If no one is present on the business premises, the policy is to leave a note. Kosinski explained, "it's just not normal policy to go into closed drawers or things like that." Here, Ms. Santiago departed from policy by entering and searching the contents of Layton's desk without any prior notice or consent. The municipal court held that, although N.J.A.C. 7:30-1.7 et seq. permits an inspector to gain access to licensee records at any reasonable time, defendant exceeded her authority when she searched the complainant's desk drawer.
*430 Defendant is not guilty of Criminal Trespass, because the State failed to prove all of the elements of the offense beyond a reasonable doubt. N.J.S.A. 2C:18-3(a) states that "a person commits (the offense of Criminal Trespass) if, knowing that he is not licensed or privileged to do so (emphasis added), he enters ... any structure or separately secured or occupied portion thereof." There exists reasonable doubt that the defendant here had knowledge that she was not privileged to enter and examine records. She relied upon the privilege she perceived was given to her under the authority of N.J.S.A. 13:1F-9(c); and N.J.A.C. 7:30-1.7.
The novel issue here is not one's guilt or innocence of Criminal Trespass, but the legality of the search under the Pesticide Control Act of 1971. Specifically, N.J.S.A. 13:1F-9(c) provides:
The department shall have power, in addition to those granted by any other law, to
(c) Enter and inspect any building or place, except private residences, for the purpose of investigating an actual or suspected violation of law relating to pesticides and ascertaining compliance or noncompliance with any rules, regulations or orders of the department.
N.J.A.C. 7:30-1.7 provides:
To determine compliance with the requirements of the Act or rules or regulations promulgated thereunder, the Department may, at reasonable hours, enter any building or place except private residences, for the purpose of inspection or sampling, and may procure samples, for analysis or examination from any lot, package or parcel or pesticide or substance suspected to contain a pesticide. If the owner, operator or agent in charge of the place to be inspected is present, officers or employees of the Department shall notify him of their attempt to inspect or sample and inform him of the reason therefor. Having been so notified, no person shall prevent officers or employees of the Department from conducting such inspection or sampling.
The warrantless search of the licensee's records is privileged. The following analysis shows that the pesticide industry is subject to pervasive regulation.
An administrative search of private property is generally held unconstitutional unless it has been authorized by a valid search warrant. See, e.g., Marshall v. Barlow's, Inc., 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978); Camara v. Municipal *431 Court, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967). However, two exceptions to the administrative search warrant requirement have been recognized. The "long standing governmental regulation" exception arises out of Colonnade Catering Corp. v. United States, 397 U.S. 72, 90 S.Ct. 774, 25 L.Ed.2d 60 (1970). There, the Supreme Court, in holding a warrantless search of a liquor dealer constitutional, noted that Congress has broad authority in designing the powers of inspection due to the long history of regulation of the liquor industry. Id. at 76, 90 S.Ct. at 777, 25 L.Ed.2d at 64.
In United States v. Biswell, 406 U.S. 311, 92 S.Ct. 1593, 32 L.Ed.2d 87 (1972), the Court announced the "pervasive government regulation" exception, thereby upholding a warrantless search of a firearms establishment conducted pursuant to authority under the Gun Control Act of 1968. In citing a diminished expectation of privacy for regulatory licensees, the Court reasoned that when "a dealer chooses to engage in this pervasively regulated business and to accept a federal license, he does so with the knowledge that his business records ... will be subject to effective inspection." Id. at 316, 92 S.Ct. at 1596, 32 L.Ed.2d at 92-93.[1]
The pervasive and long-standing government regulation exceptions to the administrative warrant requirement have been adopted in New Jersey. In re Environmental Protection Dep't., 177 N.J. Super. 304, 309-10 (App.Div. 1981). In State v. Williams, 84 N.J. 217 (1980), our Supreme Court held that warrantless searches of the liquor industry, if authorized by statute, are constitutional because the industry has historically *432 been subject to strict regulation. Id. at 223-25. Similarly, the casino gambling industry, In re Martin, 90 N.J. 295, 310-13 (1982), pharmacy industry, State v. Rednor, 203 N.J. Super. 503, 508 (App.Div. 1985), as well as the horse racing industry, State v. Dolce, 178 N.J. Super. 275, 281-85 (App.Div. 1981), have all been held to be pervasively regulated and thus subject to warrantless inspections.
In In re Environmental Protection Dep't., supra, 177 N.J. Super. at 307, the D.E.P. sought to impose a right of entry condition before issuing a permit allowing an industrial wastewater treatment facility to be constructed and operated. The D.E.P. relied on N.J.S.A. 13:1D-9(d), which is strikingly similar to N.J.S.A. 13:1F-9(c), the enabling statute in the instant case, for the authority to conduct warrantless administrative searches. The Appellate Division held that the D.E.P. was empowered to conduct warrantless inspections pursuant to N.J.S.A. 13:1D-9(d) due to the long history of detailed regulation of water pollution in this State. Id. at 313-15.
A review of the history of pesticide control regulation, including current state regulation governing the use, transportation, storage, sale and disposal of pesticides contained in the Pesticide Control Act of 1971, dictates the same result. N.J.S.A. 13:1F-1 et seq.; L. 1971, c. 176. In 1971, the Legislature found that the "indiscriminate use of pesticides in this State would constitute a serious threat to the environment; and that this threat can be eliminated only by the adoption and enforcement of regulations governing the sale, use and application of all pesticides." N.J.S.A. 13:1F-2. Thereafter, pursuant to the enabling provisions contained in N.J.S.A. 13:1F-4, the D.E.P. promulgated the voluminous and detailed Pesticide Control Code, N.J.S.A. 7:30-1.1 et seq.[2]
*433 As previously noted, N.J.S.A. 13:1F-9(c) empowers the D.E.P. to enter and inspect its licensees' business premises for the purpose of investigating suspected violations of the Pesticide Control Code. This investigatory power must be liberally construed to effectuate the purpose and intent of the Act. N.J.S.A. 13:1F-14. Furthermore, in construing the scope of the D.E.P.'s investigatory power, reliance is placed upon In re Guardianship Services Regulations, 198 N.J. Super. 132 (App. Div. 1984). The Court noted that:
[T]he grant of authority to an administrative agency engaged in protecting the health and welfare of the public is to be liberally construed in order to enable the agency to accomplish its statutory responsibilities and the courts should readily imply such incidental powers as are necessary to effectuate fully the legislative purpose. [Id. at 143.]
Consequently, the D.E.P.'s authority to enter and inspect must extend to warrantless searches of its licensees' business premises and records.
It is recognized that warrantless searches, intrusive on Fourth Amendment rights, should be the exception and not the rule. Nevertheless, licensees who operate their businesses within a pervasively regulated industry enjoy only a limited expectation of privacy. State v. Rednor, 203 N.J. Super. 503, 509 (App.Div. 1985). Additionally, the D.E.P. must be given adequate authority to discharge its public duties and ensure compliance with its statutory mandate. As the United States Supreme Court stated in United States v. Biswell, 406 U.S. 311, 92 S.Ct. 1593, 32 L.Ed.2d 87 (1972), cited in State v. Dolce, 178 N.J. Super. 275, 283-284 (App.Div. 1981):
[I]f inspection is to be effective and serve as a credible deterrent, unannounced, even frequent, inspections are essential. In this context, the prerequisite of a warrant could easily frustrate inspection; and if the necessary flexibility as to time, scope, and frequency is to be preserved, the protections afforded by a warrant would be negligible. [406 U.S. at 316, 92 S.Ct. at 1596, 32 L.Ed.2d at 92.]
*434 In the instant case, the complainant Joseph Layton's failure to timely supply the requested information effectively thwarted the D.E.P.'s investigation of a citizen complaint regarding a pesticide spray drift. New Jersey, as one of the states in the forefront of environmental protection regulation, cannot allow such noncooperation to frustrate its legislative initiatives. The D.E.P.'s warrantless entry and inspection of complainant's business premises and records was appropriate.
NOTES
[1] Following the United States Supreme Court decisions in Colonnade and Biswell, warrantless administrative searches have been upheld in a variety of regulated industries: mining and mineral extraction, Donovan v. Dewey, 452 U.S. 594, 101 S.Ct. 2534, 69 L.Ed.2d 262 (1981); Marshall v. Sink, 614 F.2d 37 (4th Cir.1980); food and drug, United States v. Schiffman, 572 F.2d 1137 (5th Cir.1978); commercial fishing, United States v. Raub, 637 F.2d 1205 (9th Cir.1980); shipping, United States v. Espinosa-Cerpa, 630 F.2d 328 (5th Cir.1980); and boating, United States v. Whitmire, 595 F.2d 1303 (5th Cir.1979).
[2] In 1984, Phillip Alampi, who served as New Jersey's Secretary of Agriculture for twenty-six years, stated before the Senate Energy and Environment Committee that our pesticide regulatory system is the most comprehensive in the country. Public Hearing before the Senate Energy and Environment Committee on Senate Bill 1342, pp. 47-48.