Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
03/13/2020 08:07 AM CDT

State of Nebraska, appellant,
v. Rudy Stanko, appellee.

___ N.W.2d ___

Filed December 20, 2019.    No. S-18-543.

1. **Criminal Law: Courts: Appeal and Error.** In an appeal of a criminal case from the county court, both the district court and a higher appellate court generally review appeals from the county court for error appearing on the record.

2. **Judgments: Appeal and Error.** When reviewing a judgment for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable; an appellate court independently reviews questions of law.

3. **Statutes.** The interpretation of a statute presents a question of law.

4. **Criminal Law: Intent: Appeal and Error.** The purpose of a prosecutorial appeal brought under Neb. Rev. Stat. § 29-2315.01 (Reissue 2016) is to provide an authoritative exposition of the law to serve as precedent in future cases.

5. **Appeal and Error.** Neb. Rev. Stat. § 29-2316 (Reissue 2016) limits the relief an appellate court can afford, even if the exception taken by the State is sustained.

6. **Criminal Law: Courts: Judgments: Appeal and Error.** A judgment of acquittal in the county court shall not be reversed by either the district court acting as an intermediate appellate court or upon further consideration in an appeal to the Nebraska Supreme Court or the Nebraska Court of Appeals, since the defendant has been placed legally in jeopardy in the trial court.

7. **Criminal Law: Directed Verdict.** In a criminal case, the court can direct a verdict only when (1) there is a complete failure of evidence to establish an essential element of the crime charged or (2) evidence is so doubtful in character and lacking in probative value that a finding of guilt based on such evidence cannot be sustained.

8. **Criminal Law: Directed Verdict: Appeal and Error.** In an appellate court's consideration of a criminal defendant's motion for a directed verdict, the State is entitled to have all its relevant evidence accepted as true, every controverted fact resolved in its favor, and every beneficial inference reasonably deducible from the evidence.

9. **Criminal Law: Proof.** The burden is on the State to prove all essential elements of the crime charged.

10. **Invitor-Invitee.** As a general matter, when a business holds a portion of its property open to the public, a person who enters the open area at a reasonable time and in a reasonable manner has the implied consent of the owner to enter the premises under a limited privilege.

11. ____. Business property owners have a common-law right to exclude from their premises those whose actions disrupt the regular and essential operations of the premises or threaten the security of the premises and its occupants.

12. **Criminal Law: Statutes: Words and Phrases.** The meaning of the word "know" or the word "knowingly" in a penal statute varies in the context in which it is used.

13. **Trespass: Words and Phrases.** The plain language of "knowing" in Neb. Rev. Stat. § 28-521(1) (Reissue 2016), in the context of entering any building or occupied structure "knowing that he or she is not licensed or privileged to do so," imposes a subjective standard focused on the accused's actual knowledge.

14. **Intent: Circumstantial Evidence.** Knowledge, like intent, may be inferred from the circumstances surrounding the act.

15. **Trial.** An affirmative defense is established as a matter of law only if there are no factual issues remaining to be resolved by the trier of fact.

16. **Trespass.** A person entering premises open to the public has not "complied with all lawful conditions imposed on access to or remaining in the premises" pursuant to Neb. Rev. Stat. § 28-522(2) (Reissue 2016) if he or she has been lawfully barred from the premises and the business has not reinstated its implied consent to entry.

Appeal from the District Court for Sheridan County, Travis P. O'Gorman, Judge, on appeal thereto from the County Court for Sheridan County, Paul G. Wess, Judge. Exception sustained.

Aaron J. Conn, Sheridan County Attorney, for appellant.

Andrew M. Pope, of Crites, Shaffer, Connealy, Watson, Patras & Watson, P.C., L.L.O., for appellee.

Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Freudenberg, J.

## NATURE OF CASE

In this exception proceeding, the question presented is whether the county court erred in directing a verdict in favor of the defendant at the close of the State's case in chief under a complaint for first degree trespass in violation of Neb. Rev. Stat. § 28-520(1)(a) (Reissue 2016). The defendant had received a "stay away" letter intended to apply to all businesses owned by the parent company issuing the letter, including two adjoining businesses owned by the same company and located in the same building, where the defendant entered during business hours and exited without incident when told to leave. The county court appeared to conclude the affirmative defense to criminal trespass described by Neb. Rev. Stat. § 28-522(2) (Reissue 2016), that compliance with "all lawful conditions imposed on access to or remaining in" the premises "at the time open to members of the public," did not encompass compliance with a "stay away" letter directed toward the defendant.

## BACKGROUND

The State filed a complaint in county court against Rudy Stanko for first degree trespass in violation of § 28-520(1)(a). The complaint related to Stanko's presence on April 3, 2017, at a Subway sandwich shop located in the same physical structure as a Pump & Pantry convenience store in Gordon, Nebraska. Bosselman Enterprises (Bosselman) owns both the Pump & Pantry and the Subway franchise at that location and had previously sent Stanko a "stay away" letter.

Section 28-520(1)(a) provides that a person commits first degree criminal trespass if he or she (1) enters or secretly remains (2) in any building or occupied structure, or any separately secured or occupied portion thereof, (3) knowing that he

or she is not licensed or privileged to do so. In contrast, Neb. Rev. Stat. § 28-521(1) (Reissue 2016) provides:

> (1) A person commits second degree criminal trespass if, knowing that he or she is not licensed or privileged to do so, he or she enters or remains in any place as to which notice against trespass is given by:
>
> (a) Actual communication to the actor; or
>
> (b) Posting in a manner prescribed by law or reasonably likely to come to the attention of intruders; or
>
> (c) Fencing or other enclosure manifestly designed to exclude intruders except as otherwise provided in section 28-520.

Section 28-522 provides that "[i]t is an affirmative defense to prosecution under sections 28-520 and 28-521 that . . . (2) [t]he premises were at the time open to members of the public and the actor complied with all lawful conditions imposed on access to or remaining in the premises[.]"

## Trial

The evidence at trial adduced during the State's case in chief demonstrated that Stanko originally distributed a free newspaper at the Pump & Pantry in Gordon. After complaints from customers, Bosselman informed Stanko that it would no longer carry the newspaper at its stores and that Stanko could pick up the undistributed issues.

When retrieving the undistributed issues of his newspaper, Stanko was "[a]ggressive" in a verbal exchange between Stanko and the Pump & Pantry store manager. The district manager for the Bosselman properties in the area explained that the aggression was such that "people working didn't feel comfortable with [Stanko's] coming into the store by the things he was saying."

In an effort to provide a safe environment for its customers and employees, Bosselman decided to send Stanko a "stay away" letter. On February 20, 2017, an attorney for Bosselman sent the certified "stay away" letter to Stanko. It was described "RE: STAY AWAY LETTER" and advised:

Bosselman Pump & Pantry, Inc. and any of its parent, sister, or subsidiary companies are requesting that you do not come onto any of its properties.

This notice follows the verbal request that you are specifically not welcome at the Bosselman property:

Pump & Pantry #34

101 W Hwy 20

Gordon, NE 69343

Furthermore, you are prohibited from telephoning any Bosselman business including Pump & Pantry # 34, 101 W Hwy 20, Gordon, Nebraska.

If you are found on this property or if you telephone this business or any Bosselman business, law enforcement will be called and you will be charged with trespassing and/or harassment.

A copy of this letter has been sent to the Gordon Police Department.

The letterhead listed all of the Bosselman businesses, including Subway. The district manager testified that the letter followed standard procedure for the company and that it could be rescinded under certain circumstances.

A copy of the letter was sent to the Gordon Police Department. Bosselman management verbally communicated to an officer of the police department that Stanko was not allowed on Bosselman's property. The officer testified that Stanko later told him that he had received the letter.

The Pump & Pantry and the Subway each have their own signage and operating hours, but they share the same building with the same address. There are separate entries for the Pump & Pantry and the Subway. Once in the building, however, people can move freely between one side and the other, unless the Subway side is closed. When the Subway side is closed and the Pump & Pantry side is open, there is a "little gate" blocking internal access. The larger entry is on the Pump & Pantry side but opens into the hallway that adjoins the Pump & Pantry and the Subway. Stanko's newspaper had been distributed in that hallway.

On April 3, 2017, Stanko entered directly into the Subway side of the building in Gordon. It was undisputed that the Subway was open to the public at that time. Stanko was immediately informed by Subway staff that he was not allowed to be there. Stanko asked why he could not order a sandwich. The manager replied that Stanko was not allowed on the property. Stanko left the building without further incident.

At the close of the State's case in chief, Stanko moved for a directed verdict. Stanko argued that the State had failed to prove the elements of first degree trespass because (1) first degree trespass involves a dwelling or other place designed for overnight accommodation; (2) unlike second degree trespass, notice is not an element of first degree trespass; and (3) the "stay away" letter warned that Stanko was not welcome at the Pump & Pantry and was prohibited from telephoning any Bosselman business, but merely "request[ed]" that Stanko not come onto any of Bosselman's properties. Further, Stanko asserted that a directed verdict should be granted because the evidence was undisputed that under the affirmative defense set forth in § 28-522(2), the building was open to members of the public and Stanko had complied with all lawful conditions.

Before ruling on the motion, the court rejected from the bench Stanko's argument that first degree trespass required a dwelling or overnight accommodation. But the court appeared to view Stanko's other arguments favorably, focusing on the affirmative defense and the absence of any dispute concerning the facts that Stanko did not create a disturbance or otherwise violate any lawful condition imposed upon the public at large and that the Subway was open to the public at the time in question. The court articulated the following:

> [I]t looks to me like, given the testimony that we have had thus far, Subsection 2, for example, the premises were at the time open to members of the public, and the actor, . . . Stanko, complied with all lawful conditions imposed upon access to or remaining in the premises . . . .

So what I am thinking is the real issue is whether or not [the Subway staff member's] testimony that . . . Stanko had come in through the entry door of Subway, walked around until she informed him he was to leave. The manager came and said . . . Stanko was to leave, and he left. And so it seems like her testimony — and she testified specifically that at the time Subway was open to members of the public. And when asked to leave, he left. He didn't do anything, you know, unlawful as far as, you know, breaking anything or disturbing anyone coming in the door or leaving when he left.

So the issue is whether or not that affirmative defense, given all the evidence that we have, is sufficient to grant a directed verdict, or does that issue go to the jury for their decision? There isn't any contrary evidence that . . . Stanko, you know, was unruly while he was in there or failed to comply with the request to leave.

The court continued with its discussion of the affirmative defense by focusing on which party has the burden of proof, stating:

[T]he burden of proof does not shift to the defendant. It stays with the prosecution to prove that either the premises [were] not open to members of the public, or that . . . Stanko failed to comply with all lawful conditions, et cetera, et cetera. And so given that, given what I believe the instruction would be, it seems as though the State has failed to prove what in the proposed instructions is instrument or element No. 6, and, therefore, a directed verdict would be proper.

Instruction No. 6 is not in the record. The court asked the parties whether they disagreed with "the proposition that it's still the State's burden." The court elaborated:

The defendant has the burden to prove that it was open to members of the public and that he failed to — or, excuse me, abided by all lawful conditions imposed on access to or remaining on the premises and, therefore, the

defendant must put on evidence and then the jury would decide that issue.

The court later continued: "[O]ne of the elements is knowing that one is not licensed or privileged to do so presupposes the defense. So, in other words, there would be no affirmative defense if a person not given notice, not to come in, didn't come in." The court asked whether a person entering a business open to the public, by virtue of entering that business, is precluded from the affirmative defense that "it was open and I didn't do anything wrong while I was in there."

In response, the State argued that Stanko was not lawfully following the conditions imposed upon him because he failed to follow the "stay away" letter.

Stanko's counsel argued that it was the State's burden to show that the Subway was not open to members of the public and to put on some evidence suggesting that Stanko may have done "anything other than lawfully comply with all conditions that were imposed on him at that moment."

After a short recess, the court granted Stanko's motion for a directed verdict and dismissed the case. The court did not further articulate its reasons for reaching that conclusion.

## EXCEPTION PROCEEDING

The State appealed the county court's decision to the district court pursuant to Neb. Rev. Stat. § 29-2317 (Reissue 2016). The State alleged, among other things, that the county court had erred in directing a verdict in favor of Stanko.

The district court dismissed the appeal. Noting that jeopardy had already attached, the district court concluded that an opinion on appeal would result in an advisory opinion with at most "marginal precedential value" because the issues presented were limited to the unique facts of this particular case.

The State appealed to the Nebraska Court of Appeals pursuant to Neb. Rev. Stat. § 29-2315.01 (Reissue 2016). The Court of Appeals granted leave to docket the appeal. Though the State had assigned several errors, the Court of Appeals granted leave to appeal only as to the error alleged regarding the

county court's issuance of a directed verdict based on its interpretation of criminal trespass statutes and affirmative defenses. We subsequently moved the case to our docket.

## ASSIGNMENTS OF ERROR

The State assigns that the district court erred in finding that the errors alleged by the county attorney in the appeal from the county court were limited to the facts of this particular case, that no issue of statutory interpretation was presented nor any other issue upon which a decision would be helpful in future cases, and that the application did not present an opportunity to provide an authoritative exposition of the law that would be sufficiently useful as precedent.

## STANDARD OF REVIEW

[1-3] In an appeal of a criminal case from the county court, both the district court and a higher appellate court generally review appeals from the county court for error appearing on the record.[1] When reviewing a judgment for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable; we independently review questions of law.[2] The interpretation of a statute presents a question of law.[3]

## ANALYSIS

[4-6] The purpose of a prosecutorial appeal brought under § 29-2315.01 is to provide an authoritative exposition of the law to serve as precedent in future cases.[4] Neb. Rev. Stat. § 29-2316 (Reissue 2016) limits the relief we can afford, even if the exception taken by the State is sustained.[5] A judgment

---

[1] See *State v. Thalken*, 299 Neb. 857, 911 N.W.2d 562 (2018).

[2] See *id.*

[3] *State v. Thalken, supra* note 1.

[4] *State v. Larkins*, 276 Neb. 603, 755 N.W.2d 813 (2008).

[5] See *State v. Thalken, supra* note 1.

of acquittal in the county court "shall not be reversed"[6] by either the district court acting as an intermediate appellate court or upon further consideration in an appeal to this court or the Court of Appeals,[7] since the defendant has been "placed legally in jeopardy"[8] in the trial court. The relief in an appeal by the State under § 29-2316 in such circumstances is limited to determining the law to govern in any similar case that may be pending or that may thereafter arise.[9]

The Court of Appeals sustained the State's application in this case as to the error alleged regarding the county court's issuance of a directed verdict based on its interpretation of criminal trespass statutes and affirmative defenses. We agree that because these are issues of first impression concerning the meaning of §§ 28-520 and 28-522, an authoritative exposition of the law is needed. The district court erred in determining otherwise.

[7,8] This exception proceeding addresses the meaning of §§ 28-520 and 28-522 within the context of whether the county court erred by granting Stanko's motion for a directed verdict. In a criminal case, the court can direct a verdict only when (1) there is a complete failure of evidence to establish an essential element of the crime charged or (2) evidence is so doubtful in character and lacking in probative value that a finding of guilt based on such evidence cannot be sustained.[10] In our consideration of a criminal defendant's motion for a directed verdict, the State is entitled to have all its relevant evidence accepted as true, every controverted fact resolved in its favor, and every beneficial inference reasonably deducible from the evidence.[11]

---

[6] § 29-2316.

[7] *Id.* See, also, *State v. Thalken, supra* note 1.

[8] § 29-2316.

[9] See *id.*

[10] *State v. Johnson*, 298 Neb. 491, 904 N.W.2d 714 (2017).

[11] *Id.*

In light of the county court's comments from the bench before its ruling, the court appeared to grant Stanko's motion for a directed verdict because it believed that under the affirmative defense to criminal trespass described by § 28-522(2), compliance with "all lawful conditions imposed on access to or remaining in" the premises "at the time open to members of the public," did not encompass compliance with a "stay away" letter directed toward the defendant. The court also appeared to consider the affirmative defense and the element of "knowing that he or she is not licensed or privileged" to be interwoven. We will begin our analysis with the elements of the crime charged.

[9] The burden is on the State to prove all essential elements of the crime charged.[12] In the charges against Stanko under § 28-520(1)(a), it was the State's burden to prove beyond a reasonable doubt that Stanko (1) entered or secretly remained in a building or occupied structure (2) with knowledge that he was not licensed or privileged to do so.[13]

The evidence demonstrated that the Subway was located in a building or occupied structure and that Stanko entered that building or occupied structure. Section 28-520 applies to "any building or occupied structure, or any separately secured or occupied portion thereof." Section 28-520 is not specifically crafted for, but encompasses, buildings or structures hosting business operations open to the public.

[10,11] As a general matter, when a business holds a portion of its property open to the public, a person who enters the open area at a reasonable time and in a reasonable manner has the implied consent of the owner to enter the premises under a limited privilege.[14] Nevertheless, such implied consent can be revoked.[15] Business property owners have a common-law right

---

[12] *State v. Wright*, 235 Neb. 564, 456 N.W.2d 288 (1990).

[13] See *id.*

[14] 87 C.J.S. *Trespass* § 151 (2018). See 75 Am. Jur. 2d *Trespass* § 40 (2018).

[15] See *id.*

to exclude from their premises those whose actions disrupt the regular and essential operations of the premises or threaten the security of the premises and its occupants.[16]

Stanko has never contended that Bosselman did not properly exercise its right to exclude him; the evidence at trial was that the exclusion stemmed from an incident of disruptive and threatening behavior. Instead, Stanko asserted in his motion for a directed verdict that the State's evidence was lacking in sufficient probative value to demonstrate that he entered the Subway "knowing" that the exclusion communicated to him by the "stay away" letter included the Subway.

[12] We have never before directly addressed the knowledge element of § 28-520(1)(a). We have said that the meaning of the word "know" or the word "knowingly" in a penal statute varies in the context in which it is used.[17] In other contexts, we have synonymized "knowingly" with "willfully" and distinguished it from "accidentally" or "involuntarily," stating that to commit an act knowingly, the defendant must be aware of what he or she is doing.[18] In *State v. Almasaudi*, we held that the phrase "receives, retains, or disposes of stolen movable property of another *knowing that* it has been stolen"[19] imposes a subjective standard.[20] We find that standard likewise applicable to § 28-520(1)(a).

Section 28-520 is patterned after § 2.02 of the Model Penal Code.[21] The comments to the Model Penal Code explain that the knowledge requirement excludes from criminal liability both the inadvertent trespasser and the trespasser who believes

---

[16] See *Uston v. Resorts International Hotel, Inc.*, 89 N.J. 163, 445 A.2d 370 (1982).

[17] See *Hancock v. State ex. rel. Real Estate Comm.*, 213 Neb. 807, 331 N.W.2d 526 (1983).

[18] See *State v. Lotter*, 255 Neb. 456, 586 N.W.2d 591 (1998).

[19] Neb. Rev. Stat. § 28-517 (Reissue 2016) (emphasis supplied).

[20] *State v. Almasaudi*, 282 Neb. 162, 802 N.W.2d 110 (2011).

[21] Model Penal Code, § 2.02, 10A U.L.A. 94 (2001).

that he has received express or implied permission to enter or remain on the premises.[22] The majority of states have statutory provisions adopting the "knowing" language of the Model Penal Code or similar language, which is generally considered to impose a subjective standard.[23] Most courts with similar statutes hold that "knowing that he [or she] is not licensed or privileged" establishes a subjective standard knowledge of legal authority or the consent of the person in lawful possession.[24] Thus, it is not sufficient for the State to show that a defendant should have known he was not licensed or privileged to enter the dwelling;[25] the fact finder must determine whether the facts and circumstances would have caused the particular defendant to "know" the requisite facts.[26]

[13,14] We agree with the majority of other jurisdictions and find that the plain language of "knowing" in § 28-521(1), in the context of entering any building or occupied structure "knowing that he or she is not licensed or privileged to do so," imposes a subjective standard focused on the accused's actual knowledge. That said, knowledge, like intent, may be inferred from the circumstances surrounding the act.[27] In fact, it is seldom capable of direct proof.[28]

---

[22] A.L.I., Model Penal Code and Commentaries § 2.02(2)(b)(i), comment 2 (1985).

[23] See 3 Wayne R. LaFave, Substantive Criminal Law § 21.2(c) (3d ed. 2018).

[24] See *State v. Dansinger*, 521 A.2d 685, 689 (Me. 1987). See, also, *State v. Santiago*, 218 N.J. Super. 427, 527 A.2d 963 (1986); *State v. Bertram*, 708 N.W.2d 913 (N.D. 2006); *Com. v. Namack*, 444 Pa. Super. 9, 663 A.2d 191 (1995); *State v. Cram*, 184 Vt. 531, 955 A.2d 528 (2008).

[25] See, *Hancock v. State ex rel. Real Estate Comm., supra* note 17; Model Penal Code, *supra* note 21 § 2.02(7). See, also, *State v. Dansinger, supra* note 24; *State v. Santiago, supra* note 24; *State v. Bertram, supra* note 24; *Com. v. Namack, supra* note 24; *State v. Fanger*, 164 Vt. 48, 665 A.2d 36 (1995).

[26] See *State v. Bernstein*, 697 N.W.2d 371 (N.D. App. 2005).

[27] *State v. Almasaudi, supra* note 20.

[28] See *Callies v. State*, 157 Neb. 640, 61 N.W.2d 370 (1953).

The "stay away" letter listed Subway on its letterhead as one of Bosselman's businesses, and Bosselman's attorney requested in the letter that Stanko "not come onto any of its properties." The letter referred to the incident in which Stanko was verbally told he was "not welcome" at the Pump & Pantry, which shares the same address and is in the same building as the Subway, with open access through a hallway between the two businesses unless the Subway is closed. Stanko acknowledged to the officer of the police department that he had received the "stay away" letter. The State presented more than sufficient evidence for a trier of fact to find that Stanko knew he was not licensed or privileged to enter the Subway on the date in question. Thus, a directed verdict for a failure of proof on the elements of the offense charged was inappropriate.

[15] Stanko's motion for a directed verdict was also based on his contention that it was undisputed he had complied with "all lawful conditions imposed on access" and thus was entitled to a directed verdict on the affirmative defense set forth by § 28-522. An affirmative defense is established as a matter of law only if there are no factual issues remaining to be resolved by the trier of fact.[29]

The propriety of a directed verdict on the affirmative defense set forth by § 28-522(2) depends on statutory interpretation of "complied with all lawful conditions imposed on access." We have never addressed the meaning of this phrase. The county court appeared to conclude that such conditions encompassed only those imposed upon the public at large to enter an open area at a reasonable time and in a reasonable manner, and it concluded that because the evidence was undisputed Stanko entered the Subway during normal business hours and was not acting in a disruptive manner, this affirmative defense could be decided as a matter of law. The State asserts in this exception

_____

[29] See *Davis v. State*, 368 Ark. 401, 246 S.W.3d 862 (2007). See, also, *Hill v. State*, 261 Ga. 377, 405 S.E.2d 258 (1991).

proceeding that "all lawful conditions imposed" includes the condition that a particular person for whom implied consent has been indefinitely and lawfully revoked cannot enter the premises until consent to enter is reinstated. We agree with the State.

The affirmative defense found in § 28-522, like § 28-520, derives from the Model Penal Code. The comments to the Model Penal Code explain that the "primary objective of the defense is to exclude criminal prosecution for mere presence of a person in a place where the public generally is invited," but the affirmative defense would not foreclose prosecution of persons "who become undesirable due to disorderly conduct or other misbehavior [which] itself amounts to another criminal offense."[30]

Only a few states have adopted this part of the Model Penal Code.[31] One case from one of those states appears at first glance to support the county court's reading of the statute. In *State v. Morse*,[32] the court held as a matter of law that the defendant should be acquitted of criminal trespass under the "open to the public" affirmative defense, despite the fact that the defendant had been indefinitely evicted from the casino in question for allegedly cheating at blackjack. The defendant had not exhibited cheating or disorderly conduct on the date he was alleged to have trespassed. The court reasoned that, as a place of public business, the casino could lawfully exclude patrons for cause only, and it stated that "fairness mandates that when the patron attempts to return to the casino and acts in accordance with all lawful conditions imposed, the patron

---

[30] A.L.I., Model Penal Code and Commentaries § 221.2, comment 2 at 90 (1980).

[31] Conn. Gen. Stat. Ann. § 53a-110 (West 2012); § 28-522; N.J. Stat. Ann. § 2C:18-3 (West 2015); 18 Pa. Stat. Ann. § 3503 (West 2015); S.D. Codified Laws § 22-35-7 (2017); Wash. Rev. Code Ann. § 9A.52.090 (West 2015).

[32] *State v. Morse*, 276 N.J. Super. 129, 647 A.2d 495 (1994).

cannot be excluded, as he is not interfering with any legitimate business interests."[33]

But, in *State v. Slobin*,[34] a case from the same jurisdiction also involving blackjack at a casino, the court rejected as dicta any contention that an exclusion by a business open to the public can last for no more than 24 hours. The court then affirmed criminal trespass convictions of patrons who were indefinitely barred from the blackjack table for repeated disorderly conduct, despite the fact that they were not disorderly on the date they were alleged to have trespassed.[35] Other courts in jurisdictions with statutes adopting the language of the Model Penal Code have similarly affirmed convictions of criminal trespass when the defendants were lawfully barred from the business premises, despite otherwise behaving reasonably at the time for which they were charged for trespassing.[36]

[16] We hold that a person entering premises open to the public has not "complied with all lawful conditions imposed on access to or remaining in the premises" pursuant to § 28-522(2) if he or she has been lawfully barred from the premises and the business has not reinstated its implied consent to entry. While a penal statute is to be construed strictly, it is to be given a sensible construction in the context of the object sought to be accomplished, the evils and mischiefs sought to be remedied, and the purpose sought to be served.[37] And in the absence of anything indicating otherwise, statutory language is to be given its plain and ordinary meaning.[38]

---

[33] *Id.* at 134, 647 A.2d at 497.

[34] *State v. Slobin*, 294 N.J. Super. 154, 682 A.2d 1205 (1996).

[35] *Id.*

[36] See, *Com. v. White*, 342 Pa. Super. 1, 492 A.2d 32 (1985); *State v. Finley*, 97 Wash. App. 129, 982 P.2d 681 (1999). See, also, *Alexis v. McDonald's Restaurants of Massachusetts*, 67 F.3d 341 (1st Cir. 1995).

[37] *In re Interest of W.D.*, 232 Neb. 581, 441 N.W.2d 608 (1989).

[38] *Id.*

Unlike that portion of § 28-522(2) describing the element that "[t]he premises were at the time open to members of the public," § 28-522(2) does not limit "all lawful conditions imposed" to those imposed on "members of the public." Rather, § 28-522(2) designates that "*the actor* complied with all lawful conditions imposed on access to or remaining in the premises." (Emphasis supplied.)

Thus, the plain language of § 28-522(2) encompasses conditions specific to a specific patron, and we will not read into the statute "all lawful conditions imposed [*on the general public*]." It is not sensible to conclude that the Legislature wished to shield lawfully barred former business patrons from criminal trespass liability so long as they comply with the conditions of the limited privilege granted by the business to the public at large.

The county court was correct that "one of the elements is knowing that one is not licensed or privileged to do so presupposes the defense," inasmuch as the "open to the public" affirmative defense is one of privilege and negates the unlawful entry element of criminal trespass.[39] The county court was incorrect, however, in its understanding of what "all lawful conditions" under the "open to the public" affirmative defense entails.

Under the facts presented, there was no legal basis for granting a directed verdict in Stanko's favor. The State presented evidence from which the trier of fact could have determined that Stanko was lawfully barred from the Subway, knew he was barred from the Subway, and did not comply with the condition that he not enter the Subway until his privilege was reinstated. Stanko's acquittal stands, pursuant to the limits of relief we can afford under a prosecutorial appeal brought under § 29-2315.01, but the State's exception is sustained. When the business revokes and has not reinstated its limited implied privilege to enter at a reasonable time and in a reasonable

---

[39] See *State v. R.H.*, 86 Wash. App. 807, 939 P.2d 217 (1997).

manner, the defendant has not complied with all lawful conditions imposed on access to or remaining in the premises, for purposes of the "open to the public" affirmative defense set forth in § 28-522.

## CONCLUSION

For the foregoing reasons, we sustain the State's exception to the district court's order, which should have sustained the exception to the county court's judgment.

Exception sustained.

Heavican, C.J., not participating.