Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
06/23/2020 08:08 AM CDT

State of Nebraska, appellee, v.
Jason H. McGuire, appellant.

___ N.W.2d ___

Filed June 16, 2020.    No. A-19-693.

1. **Rules of Evidence: Hearsay: Appeal and Error.** Apart from rulings under the residual hearsay exception, an appellate court reviews for clear error the factual findings underpinning a trial court's hearsay ruling and reviews de novo the court's ultimate determination whether the court admitted evidence over a hearsay objection or excluded evidence on hearsay grounds.

2. **Judges: Appeal and Error.** The exercise of judicial discretion is implicit in determining the relevance of evidence, and a trial court's decision regarding relevance will not be reversed absent an abuse of discretion.

3. **Constitutional Law: Witnesses: Appeal and Error.** An appellate court reviews de novo a trial court's determination of the protections afforded by the Confrontation Clause of the Sixth Amendment to the U.S. Constitution and reviews the underlying factual determinations for clear error.

4. **Convictions: Evidence: Appeal and Error.** Regardless of whether the evidence is direct, circumstantial, or a combination thereof, and regardless of whether the issue is labeled as a failure to direct a verdict, insufficiency of the evidence, or failure to prove a prima facie case, the standard is the same: In reviewing a criminal conviction, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact, and a conviction will be affirmed, in the absence of prejudicial error, if the evidence admitted at trial, viewed and construed most favorably to the State, is sufficient to support the conviction.

5. **Blood, Breath, and Urine Tests: Drunk Driving: Evidence: Proof.** The four foundational elements which the State must establish as a foundation for the admissibility of a breath test in a driving under

the influence prosecution are as follows: (1) that the testing device was working properly at the time of the testing, (2) that the person administering the test was qualified and held a valid permit, (3) that the test was properly conducted under the methods stated by the Department of Health and Human Services, and (4) that all other statutes were satisfied.

6. **Criminal Law: Directed Verdict.** In a criminal case, the court can direct a verdict only when (1) there is a complete failure of evidence to establish an essential element of the crime charged or (2) evidence is so doubtful in character and lacking in probative value that a finding of guilt based on such evidence cannot be sustained.

7. **Criminal Law: Directed Verdict: Appeal and Error.** In an appellate court's consideration of a criminal defendant's motion for a directed verdict, the State is entitled to have all its relevant evidence accepted as true, every controverted fact resolved in its favor, and every beneficial inference reasonably deducible from the evidence.

Appeal from the District Court for Lancaster County: Kevin R. McManaman, Judge. Affirmed.

Brad Roth, of McHenry, Haszard, Roth, Hupp, Burkholder & Blomenberg, P.C., L.L.O., for appellant.

Douglas J. Peterson, Attorney General, and Nathan A. Liss for appellee.

Moore, Chief Judge, and Riedmann and Welch, Judges.

Welch, Judge.

## I. INTRODUCTION

Jason H. McGuire appeals his jury conviction for aggravated driving under the influence (DUI), third offense. McGuire argues that the Lancaster County District Court erred in overruling his objections to the admission of certain documents and test results offered in connection with the DataMaster breath testing device used to test McGuire's breath for alcohol at the time of his arrest and in denying his motion for a directed verdict. For the reasons set forth herein, we affirm.

## II. STATEMENT OF FACTS

In August 2018, McGuire was charged with DUI with a breath alcohol content greater than .15, third offense. A jury trial was held on May 9 and 10, 2019, with testimony adduced from Lancaster County sheriff's deputy Casey Dahlke and Lincoln police investigator Grant Powell.

### 1. Dahlke

At trial, Dahlke testified that on April 6, 2018, he observed McGuire's swerving his vehicle while driving. After stopping McGuire, Dahlke administered field sobriety tests, the results of which indicated McGuire was impaired. Dahlke then arrested McGuire "for the purpose of having him submit to a chemical test." Approximately 40 minutes after the traffic stop, Dahlke, who has a Class B permit to administer such tests, administered a chemical breath test on DataMaster serial No. 300402 in accordance with title 177 of the Nebraska Administrative Code. Dahlke verified the maintenance of the DataMaster, and then performed the chemical breath test on McGuire, which indicated a result of .199 of 1 gram of alcohol per 210 liters of breath.

### 2. Powell

Powell testified he has been the Lincoln Police Department's DataMaster maintenance officer since 2016 and is responsible, along with two other individuals, for maintaining and testing Lancaster County's four DataMaster breath testing instruments, including DataMaster serial No. 300402. To be a maintenance officer, Powell must hold a Class B permit from the Department of Health and Human Services (DHHS) which allows operation of the DataMaster to collect subject samples. Powell's Class B permit was originally issued in March 2004 and has remained valid since that date. Powell is also charged with providing notice to DHHS identifying those persons who will be responsible for maintaining the breath testing instruments.

Powell further testified that the State of Nebraska has adopted rules and regulations found at title 177 for the testing of a subject's alcohol concentration and checking those instruments to ensure they are working properly. Powell expounded that the DataMaster is approved by title 177 as a method of testing alcohol in a subject's breath. Powell indicated his duties as a maintenance officer include conducting calibration verification checks on the instrument as required by DHHS and arranging for any repair of the instrument if it becomes necessary. Powell testified the DataMaster undergoes periodic testing required under title 177 and stated maintenance calibration tests are performed every 40 days.

Powell testified that DataMaster serial No. 300402 was placed into service in November 2016 and has been routinely maintained since that date with, as relevant here, 40-day calibration checks conducted on March 20 and April 24, 2018. Sometime after completion of the April 24 check, Powell learned the certificates of analysis initially sent with the calibration solutions were not signed by the person who tested the solutions; however, Powell obtained amended certificates of analysis in early May. Powell indicated the only difference between the original and amended certificates of analysis was the change in identity of the person who performed the test, but that difference did not change his opinion that the DataMaster was working properly when used to test McGuire's breath on April 6.

### 3. EXHIBITS

During trial, the State offered multiple exhibits, including exhibits 4, 5, and 6, to which McGuire objected based on relevancy, foundation, and hearsay and on right to confrontation grounds. Exhibit 4 contained a certification of accuracy form, referred to as an "Attachment 5," and test results that were completed when the DataMaster serial No. 300402 was placed into service, a certificate of analysis, and an amended certificate of analysis. Exhibit 5 was composed

of calibration verification records, and exhibit 6 contained certificates of analysis and amended certificates of analysis. The court overruled the objections and received exhibits 4, 5, and 6. McGuire also objected on foundational grounds to the receipt of exhibit 10, which contained the printout showing McGuire's DataMaster breath analysis results, but the district court overruled his objection and received exhibit 10.

### 4. Verdict and Sentencing

Ultimately, the jury found McGuire guilty of DUI with a breath alcohol content of 0.15 or more of 1 gram per 210 liters of his breath. The court sentenced McGuire to 3 years' probation to include 60 days in jail, revoked his license for 7 years with the opportunity to seek an ignition interlock permit after 45 days, and imposed a $1,000 fine. McGuire has timely appealed and is represented by the same counsel that represented him during trial and sentencing.

## III. ASSIGNMENTS OF ERROR

McGuire contends, renumbered and restated, that the district court erred in (1) overruling his objection to the admission of documents purporting to certify the accuracy of the DataMaster, (2) overruling his objection to the admission of the DataMaster breath analysis results, (3) overruling his objection to the falsified certificates of analysis purporting to certify the reliability of test solutions used to verify the calibration of the DataMaster, and (4) denying his motion for a directed verdict.

## IV. STANDARD OF REVIEW

[1] Apart from rulings under the residual hearsay exception, an appellate court reviews for clear error the factual findings underpinning a trial court's hearsay ruling and reviews de novo the court's ultimate determination whether the court admitted evidence over a hearsay objection or excluded evidence on hearsay grounds. *State v. Dady*, 304 Neb. 649, 936 N.W.2d 486 (2019).

[2] The exercise of judicial discretion is implicit in determining the relevance of evidence, and a trial court's decision regarding relevance will not be reversed absent an abuse of discretion. *State v. Draganescu*, 276 Neb. 448, 755 N.W.2d 57 (2008).

[3] An appellate court reviews de novo a trial court's determination of the protections afforded by the Confrontation Clause of the Sixth Amendment to the U.S. Constitution and reviews the underlying factual determinations for clear error. *State v. Smith*, 286 Neb. 856, 839 N.W.2d 333 (2013).

[4] Regardless of whether the evidence is direct, circumstantial, or a combination thereof, and regardless of whether the issue is labeled as a failure to direct a verdict, insufficiency of the evidence, or failure to prove a prima facie case, the standard is the same: In reviewing a criminal conviction, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact, and a conviction will be affirmed, in the absence of prejudicial error, if the evidence admitted at trial, viewed and construed most favorably to the State, is sufficient to support the conviction. *State v. Case*, 304 Neb. 829, 937 N.W.2d 216 (2020); *State v. Stubbendieck*, 302 Neb. 702, 924 N.W.2d 711 (2019).

## V. ANALYSIS

### 1. Certificates of Analysis

McGuire's first three assignments of error on appeal are based upon an assertion similar to that recently addressed in *State v. Krannawitter*, 305 Neb. 66, 939 N.W.2d 335 (2020). That is, McGuire claims that because original certificates of analysis associated with testing solutions used to maintain the DataMaster were incorrect, the test results should have been omitted from evidence. In *Krannawitter*, a case involving original and amended certificates provided by the same persons and laboratory as here, the evidentiary objections were limited to foundation and violation of confrontation rights.

McGuire includes those objections and expands his objections to include hearsay and relevancy. We will analyze those four objections independently.

### (a) Foundation

[5] McGuire raises a foundational objection to the DataMaster test results. The Nebraska Supreme Court has already squarely addressed a foundational objection in *Krannawitter*. There, in dealing with amended certificates of analysis similar to the case at bar, the court held:

> Krannawitter's argument on appeal is based on her assertion that because the original certificates of analysis were incorrect, there was insufficient foundation to support the introduction of her chemical breath test results. The four foundational elements which the State must establish as a foundation for the admissibility of a breath test in a [DUI] prosecution are as follows: (1) that the testing device was working properly at the time of the testing, (2) that the person administering the test was qualified and held a valid permit, (3) that the test was properly conducted under the methods stated by [DHHS], and (4) that all other statutes were satisfied. The certificate of analysis at issue in this appeal is required by 177 Neb. Admin. Code, ch. 1, § 008.04A (2016), of [DHHS] regulations. Krannawitter contends—as set forth above— that the State did not prove § 008.04A, which requires that the test be properly conducted under the methods stated by [DHHS].
>
> But Krannawitter's assertion that there was improper foundation overlooks both the framework used to determine whether a motion for new trial should be granted and the substantive effect of the amended certificates. We agree with Krannawitter that together with Palmer's affidavit, the amended certificates of analysis showed that the *original* certificates were incorrect.
>
> But we do not agree that this fact results in the conclusion that there was no foundation for the admission of

the breath test results. In addition to contributing to the evidence showing that the original certificates were incorrect, the amended certificates were independent foundational evidence supporting the admission of those results. And in addition to even these certificates, there was other evidence presented at the hearing on the amended motion for new trial that supported the admissibility of the results.

*State v. Krannawitter*, 305 Neb. 66, 76-77, 939 N.W.2d 335, 343-44 (2020).

Although the procedural posture of this case is different, the foundational question remains the same. Accordingly, we follow the Nebraska Supreme Court's analysis. In the present case, the amended certificates of analysis were offered into evidence at trial. They provided independent foundational evidence which supported the admission of McGuire's chemical breath test results. Additionally, there was other evidence supporting the admissibility of McGuire's breath test consisting of Powell's testimony that the DataMaster was tested on March 20 and April 24, 2018, and was determined to be working properly and had tested within the acceptable margin of error. Therefore, the deficiency in the original certificates of analysis did not render McGuire's chemical breath test results inadmissible for lack of foundation, and the court did not err in overruling McGuire's foundational objection on that basis.

McGuire separately argues that the amended certificates themselves should have been excluded from evidence on foundational grounds once the integrity of the original certificates was called into question. As more fully discussed in the hearsay portion of this opinion, the certificates themselves were relevant evidence because 177 Neb. Admin. Code, ch. 1, § 008.04A (2016), requires that the certificates "accompan[y]" the wet bath simulator solution used to calibrate the DataMaster. The certificates were then offered for that purpose, that is, to lay foundation for the admission of McGuire's test results. Because the amended certificates, on their face,

complied with § 008.04A, they were admissible foundational evidence, and the amended nature of the certificates did nothing to render the certificates inadmissible on foundational grounds. Stated differently, just as the same amended certificates and other testimony in *State v. Krannawitter, supra*, provided sufficient admissible foundational evidence for the chemical breath test results in *Krannawitter*, they provided sufficient admissible foundational evidence for McGuire's chemical breath test results here. As such, McGuire's first assignment of error that amended certificates of analysis provided insufficient foundation for the admission of his chemical breath test results fails.

### (b) Confrontation Clause

McGuire next argues that the district court erred in allowing the certificates of analysis into evidence because such admission violated his rights under the Confrontation Clause. Specifically, he argues that the court violated his right to confrontation by not allowing him to cross-examine the individuals who provided the original and amended certificates of analysis and that, in doing so, the district court erroneously relied upon *State v. Britt*, 283 Neb. 600, 813 N.W.2d 434 (2012). Again, this issue was specifically addressed by the Nebraska Supreme Court in *State v. Krannawitter*, 305 Neb. 66, 939 N.W.2d 335 (2020). There, the court held:

> Krannawitter also argued that her confrontation rights were violated when she was not permitted to confront the witnesses against her, specifically naming Hale. The district court rejected this claim in its order, citing to *State v. Fischer*[, 272 Neb. 963, 726 N.W.2d 176 (2007),] wherein this court held that certificates of analysis similar to these are nontestimonial.
>
> Krannawitter argues that our prior case law is distinguishable because there were *amended* certificates of analysis, the "primary purpose of [which] was to present after-the-fact evidence that the calibration verification

was reliable so that the State could establish that the testing device was working properly at the time the breath test was administered." [Brief for appellant at 30-31.] While we understand the distinction Krannawitter relies upon, we find that it makes no difference in this case.

In concluding that such certificates of analysis were nontestimonial, this court in *Fischer* reasoned that the statements in a certificate "did not pertain to any particular pending matter" and that the certificate "was prepared in a routine manner without regard to whether the certification related to any particular defendant." [*State v. Fischer, supra.*]

This reasoning is also applicable to the amended certificates now at issue. There is no indication from the face of the amended certificates that they were prepared for a particular criminal proceeding. Rather, the testimony of one of the maintenance officers indicated that the amended certificates were "additional documentation" received by the county in connection with the simulator solutions in the county's possession and that the only difference between the original and the amended certificates was the name of the person who tested the solutions.

*State v. Krannawitter*, 305 Neb. at 77-78, 939 N.W.2d at 344.

Likewise, the amended certificates offered into evidence here were not prepared for this or any particular criminal proceeding. They were provided as additional documentation received in connection with the simulator solutions and offered to show compliance with the aforementioned regulation. The only difference in the amended certificate and the original certificate was the name of the person who tested the solution. Like in *Krannawitter*, the amended certificates here were nontestimonial evidence and their introduction did not violate McGuire's rights under the Confrontation Clause.

### (c) Hearsay

McGuire next argues that the certificates of analysis were hearsay evidence and were wrongly admitted over his hearsay

objection. A similar argument was raised by the defendant in *Krannawitter*; however, the Nebraska Supreme Court did not reach the argument due to the defendant's failure to raise the argument in her amended motion for new trial.

In support of his theory, McGuire argues that the certificates of analysis cannot be considered admissible under the business records exception to the hearsay rule, because the source of the information in the record indicates a lack of trustworthiness and because the State failed to call the proper custodian of records to lay foundation for admission under the requirements of Neb. Rev. Stat. § 27-803(5)(b) (Reissue 2016). Both of McGuire's arguments contemplate that the district court admitted the documents under the business records exception to the hearsay rule. Because we find that, in the context in which the certificates were offered, they were not hearsay, we need not consider this argument.

Neb. Rev. Stat. § 27-801(3) (Reissue 2016) provides that "Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." A "statement" is defined by § 27-801(1) as "an oral or written assertion or . . . nonverbal conduct of a person, if it is intended by him as an assertion," and a "declarant" is defined by § 27-801(2) as a "person who makes a statement." Finally, Neb. Rev. Stat. § 27-802 (Reissue 2016) provides that "[h]earsay is not admissible except as provided by these rules, by other rules adopted by the statutes of the State of Nebraska, or by the discovery rules of the Supreme Court." Accordingly, in this context, we must first determine whether the offered certificates of analysis fit the definition of hearsay before exploring whether the certificates became admissible by exception or were inadmissible.

This case involves McGuire's alleged violation of Neb. Rev. Stat. § 60-6,196 (Reissue 2010). In order to prove that McGuire failed to comply with that statute, the State offered evidence of McGuire's breath test which was obtained by the

arresting officer, as allowed by Neb. Rev. Stat. § 60-6,197 (Cum. Supp. 2018), following McGuire's arrest. In relation to such evidence, Neb. Rev. Stat. § 60-6,201 (Reissue 2010) provides in relevant part:

(1) Any test made under section 60-6,197, if made in conformity with the requirements of this section, shall be competent evidence in any prosecution under a state statute or city or village ordinance involving operating a motor vehicle while under the influence of alcoholic liquor or drugs or involving driving or being in actual physical control of a motor vehicle when the concentration of alcohol in the blood or breath is in excess of allowable levels.

. . . .

(3) To be considered valid, tests of blood, breath, or urine made under section 60-6,197 or tests of blood or breath made under section 60-6,211.02 shall be performed according to methods approved by [DHHS] and by an individual possessing a valid permit issued by [DHHS] for such purpose, except that a physician, registered nurse, or other trained person employed by a licensed health care facility or health care service which is defined in the Health Care Facility Licensure Act or clinical laboratory certified pursuant to the federal Clinical Laboratories Improvement Act of 1967, as such act existed on September 1, 2001, or Title XVIII or XIX of the federal Social Security Act, as such act existed on September 1, 2001, to withdraw human blood for scientific or medical purposes, acting at the request of a peace officer, may withdraw blood for the purpose of a test to determine the alcohol concentration or the presence of drugs and no permit from [DHHS] shall be required for such person to withdraw blood pursuant to such an order. [DHHS] may approve satisfactory techniques or methods to perform such tests and may ascertain the qualifications and competence of individuals to perform such

tests and issue permits which shall be subject to termination or revocation at the discretion of [DHHS].

After examining the predecessor statute to § 60-6,201, the Nebraska Supreme Court set forth four foundational steps the State must provide in order to "offer in evidence the results of a breath test for the purpose of establishing that a defendant was at a particular time operating a motor vehicle while having ten-hundredths of one percent or more by weight of alcohol in his body fluid." *State v. Gerber*, 206 Neb. 75, 90, 291 N.W.2d 403, 411 (1980), *overruled on other grounds, State v. Obermier*, 241 Neb. 802, 490 N.W.2d 693 (1992). In order to do so, the court held:

> [T]he State must prove the following: (1) That the testing device or equipment was in proper working order at the time of conducting the test; (2) That the person giving and interpreting the test was properly qualified and held a valid permit issued by [DHHS] at the time of conducting the test; (3) That the test was properly conducted in accordance with a method currently approved by [DHHS]; and (4) That there was compliance with any statutory requirements.

*Id.* at 90-91, 291 N.W.2d at 411-12. The most recent version of those foundational elements first described in *Gerber* were provided by the Nebraska Supreme Court in *State v. Krannawitter*, 305 Neb. 66, 939 N.W.2d 335 (2020), which we set forth above.

As noted above, the certificates of analysis being offered by the State here relate to a specific requirement from DHHS. Specifically, § 008.04A of title 177 provides that in connection with testing device calibration and calibration verification using a wet bath simulator solution:

> The wet bath simulator solution . . . must be accompanied by a certificate of analysis. The certificate of analysis must contain the following information:
> a. Name of the company which prepared the solution;
> b. Name of the person who tested the solution;

c. Solution identification;

d. Chemical analysis of the solution;

e. Expected breath instrument calibration check test result;

f. Name of the accreditation institution (ISO, NIST, etc.) for the testing laboratory; and

g. A notarized signature of the responsible individual (company president of testing operator, e.g.).

As such, in accordance with the third foundational element as listed in *State v. Krannawitter, supra*, in order to show compliance with the DHHS rule, the State offered the certificate of analysis because the regulation required the certificate accompany the wet bath solution used to calibrate the DataMaster. That certificate then contained all of the information required under § 008.04A.

Taken together, in order for McGuire's test results to be considered valid as set forth in § 60-6,201(3) and to be considered "competent evidence" of a test made under § 60-6,197, the State needed to show that the test was properly conducted under the methods stated by DHHS. One of those methods required by DHHS involves the calibration of the machine using a wet bath simulator solution and, in that regard, that solution must "be accompanied by a certificate of analysis." As such, the State was offering the certificate of analysis to show compliance with the regulation—that is, that the wet bath solution used to calibrate the DataMaster was "accompanied" by the certificate which contained the required elements of the regulation, regardless of their truth. Stated differently, although the certificates contemplated by § 008.04A clearly amount to a statement by the certificate author reciting the required contents of the statute, the certificate was not offered for the truth of the matter asserted. Instead, it was being offered to show specific compliance with the statutory directive that the wet solution used to calibrate the DataMaster was "accompanied" by the required certificate of analysis. That is not to say that, at trial, McGuire could not challenge

the contents of the certification or solution used to calibrate the DataMaster as part of his defense. McGuire was free to challenge the contents of that certificate at trial if there were reason to believe the amended certificate somehow had some bearing on the proper calibration of the DataMaster or whether it was working properly on the day of his test. But the evidence was properly admissible as nonhearsay evidence to lay foundation for the admission of McGuire's test results. For that reason, McGuire's argument that the amended certificates were inadmissible hearsay fails.

### (d) Relevancy

McGuire last argues that the amended certificates were not relevant. In support of that contention, McGuire argues that in "the present case, the original Certificates of Analysis and the Amended Certificates of Analysis each gave rise to conflicting inferences that the other is inaccurate and untrustworthy," and that because "this evidence gives rise to conflicting inferences of equal probability [the aforementioned certificates] cannot be relevant evidence." Brief for appellant at 24.

According to the rules of evidence, "[r]elevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Neb. Rev. Stat. § 27-401 (Reissue 2016). "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Neb. Rev. Stat. § 27-403 (Reissue 2016).

Regarding the relevance of the certificates of analysis, we note the only discrepancy between the original certificates of analysis and the amended certificates of analysis was the person who tested the solutions. The numerical values on the original certificates and amended certificates were unchanged.

These certificates of analysis were used to show compliance with regulations promulgated by DHHS as discussed above in order to lay foundation to admit the test results. Clearly, the certificates fall within the definition of relevant evidence, and although the amended certificates could open the door to some conflict with regard to their contents, the probative value of the certificates of analysis was not substantially outweighed by any danger warranting their exclusion. Therefore, we conclude there is no merit to this argument.

### 2. Motion For Directed Verdict

Lastly, McGuire argues the district court erred in denying his motion for directed verdict. More specifically, McGuire asserts the district court should have excluded his breath test results, leaving insufficient evidence for a jury to find him guilty of an aggravated DUI. McGuire contends that in the alternative, the case should be remanded for a new trial.

[6,7] Regarding directed verdicts, the Nebraska Supreme Court has explained:

> In a criminal case, the court can direct a verdict only when (1) there is a complete failure of evidence to establish an essential element of the crime charged or (2) evidence is so doubtful in character and lacking in probative value that a finding of guilt based on such evidence cannot be sustained. In our consideration of a criminal defendant's motion for a directed verdict, the State is entitled to have all its relevant evidence accepted as true, every controverted fact resolved in its favor, and every beneficial inference reasonably deducible from the evidence.

*State v. Stanko*, 304 Neb. 675, 684, 936 N.W.2d 353, 361 (2019).

As explained previously, the district court did not err in receiving McGuire's breath test results or the certificates of analysis that certified the accuracy of the DataMaster and the reliability of test solutions used to verify the DataMaster's

calibration. Thus, the evidence was sufficient for a jury to conclude McGuire was guilty of an aggravated DUI and for the trial court to overrule McGuire's motion for directed verdict. Therefore, we conclude there is no merit to this assigned error, and we decline remanding the cause for a new trial.

## VI. CONCLUSION

For the reasons previously discussed, we affirm the district court's receipt of McGuire's breath test results and supporting documentation and affirm the district court's denial of McGuire's motion for directed verdict.

AFFIRMED.